United States District Court
Southern District of Texas

**ENTERED**

March 07, 2023

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ICI CONSTRUCTION, INC.,           §
                                  §
        Plaintiff,                §
                                  §
v.                                §   CIVIL ACTION NO. H-22-3347
                                  §
HUFCOR, INC., SCOTT DOBAK,        §
TOM GIOIA, and NEAL BERENS,       §
                                  §
        Defendants.               §

## MEMORANDUM OPINION AND ORDER

Plaintiff, ICI Construction, Inc. ("Plaintiff" or "ICI"), brings this action against defendants, Hufcor, Inc. ("Hufcor"), and three of Hufcor's former officers: Scott Dobak ("Dobak"), former Chief Executive Officer ("CEO"); Tom Gioia ("Gioia"), former Chief Financial Officer ("CFO"); and Neal Berens ("Berens"), former Chief Operations Manager ("COM")(collectively, "the Officer Defendants"). Pending before the court is Defendants Tom Gioia's, Scott Dobak's, and Neal Berens's Second Motion to Dismiss ("Officer Defendants' Motion to Dismiss") (Docket Entry No. 21), and Defendants Scott Dobak, Tom Gioia, and Neal Berens's Opposed Motion to Strike Plaintiff's Sur-Reply ("Officer Defendants' Motion to Strike")(Docket Entry No. 29). Also pending is ICI Construction Inc.'s Response to Scott Dobak's, Tom Gioia's, and Neal Berens' Second Motion to Dismiss ("Plaintiff's Response to Officer Defendants' Motion to Dismiss")(Docket Entry No. 22), in which Plaintiff requests a continuance and leave to replead if needed to

prevent dismissal, and ICI Construction, Inc.'s Response to Scott Dobak's, Tom Gioia's, and Neal Berens' Motion to Strike ICI Construction, Inc.'s Surreply ("Plaintiff's Response to Officer Defendants' Motion to Strike") (Docket Entry No. 30), in which Plaintiff argues that Defendants' Motion to Strike should be denied, and alternatively seeks leave to file its sur-reply. For the reasons stated below the Defendants' motions will be granted, and Plaintiff's requests for continuance, leave to replead, and leave to file a sur-reply will be denied.

## I. **Background**

### A. **Factual Background**[1]

This action arises from a sub-contract agreement ("Contract") between ICI, a Texas corporation, and Hufcor, a Wisconsin corporation, pursuant to which Hufcor agreed to furnish all labor, materials, equipment, services, and supplies for the installation of glass folding panel partitions for Cypress-Fairbanks Independent School District's Elementary School #58 ("Project") in Harris County, Texas.[2]  The Contract was signed by Bart Cobb ("Cobb"),

---

[1]The Factual Background is derived from allegations made in Plaintiff's Second Amended Complaint ("SAC"), Docket Entry No. 14, pp. 4-6, which are accepted as true for purposes of analyzing Defendants' Motion to Dismiss. Page numbers for docket entries in the record refer to the pagination inserted at the top of the page by the court's electronic filing system, CM/ECF.

[2]Contract, Exhibit A to SAC, Docket Entry No. 14-1.

2

Plaintiff's President/Project Manager on September 22, 2021.[3]
Plaintiff alleges that on or about October 27, 2021, Hufcor
requested a deposit of $103,000.00 to secure pricing, contract
value, and delivery of the partition panels, and that in reliance
on representations that the deposit would be used for these
purposes, Plaintiff paid the deposit.  On November 5, 2021, the
Contract was signed by Gioia, Hufcor's CFO,[4] who is a citizen of
the State of Georgia.[5]  In early February of 2022, Plaintiff began
seeking proof from Hufcor's upper management that Hufcor paid the
deposit to its glass supplier.  On February 24, 2022, Plaintiff
received an email from Berens, Hufcor's COM,[6] who is a citizen of
the State of Illinois,[7] which was copied to Dobak, Hufcor's CEO,[8]
who is a citizen of the State of Tennessee.[9]  Attached to the email
was a letter signed by Berens, which stated that

> [t]his letter is intended to confirm the pricing,
> contract value and delivery of the partition panels
> associated with job Cy-Fair ISD ES #58.  Additionally,
> Hufcor has received a deposit of $103,000 down payment on

---

[3]Id. at 5.

[4]Id.

[5]SAC, Docket Entry No. 14, p. 2 ¶ 10.

[6]Berens February 24, 2022, Email and Letter, Exhibit B to SAC,
Docket Entry No. 14-2, p. 1.

[7]SAC, Docket Entry No. 14, p. 2 ¶ 11.

[8]Berens February 24, 2022, Email and Letter, Exhibit B to SAC,
Docket Entry No. 14-2, p. 1.

[9]SAC, Docket Entry No. 14, p. 2 ¶ 9.

this project which secures pricing for the project. This project will not be subject to current or future price increases. Finally, we are committing to delivering the panels associated with this job in December of this year.[10]

Plaintiff alleges that Hufcor failed to deliver or install the partition panels, and that neither Hufcor nor the Officer Defendants returned the deposit.

## B.    Procedural Background

Plaintiff filed an Original Petition against Hufcor on June 24, 2022, in the 234th Judicial District Court of Harris County, Texas, under cause number 2022-38198, asserting claims for breach of contract, conversion, common law fraud, fraudulent inducement, civil theft, and negligent misrepresentation.[11] On August 18, 2022, Plaintiff filed Plaintiff's First Amended Petition, which added claims for breach of fiduciary duty and breach of trust, and added the three Officer Defendants: Dobak, Gioia, and Berens, against whom Plaintiff asserted all its claims except the claim for breach of contract.[12]

---

[10]Berens February 24, 2022, Letter, Exhibit B to SAC, Docket Entry No. 14-2, p. 2.

[11]Plaintiff's Original Petition, Exhibit A to Notice of Removal, Docket Entry No. 1-1.

[12]Plaintiff's First Amended Petition, Exhibit D to Notice of Removal, Docket Entry No. 1-4.

4

On September 28, 2022, the Officer Defendants removed the case to this court,[13] and filed Defendant Hufcor, Inc.'s Notice of Consent to Removal, executed by the receiver for Hufcor.[14]

On November 4, 2022, the Officer Defendants filed their first motion to dismiss under Rule 12(b)(6) and, in the alternative, under Rule 12(b)(2).[15]

On November 23, 2022, Plaintiff filed the SAC, which added claims for unjust enrichment and money had and received and dropped the claims for breach of fiduciary duty and breach of trust.[16]

On November 28, 2022, the court entered an Order mooting the Officer Defendants' first motion to dismiss,[17] and on December 7, 2022, the Officer Defendants filed the pending motion to dismiss.

On December 27, 2022, ICI filed Plaintiff's Response to Defendants' Motion to Dismiss.  On January 10, 2023, the Officer Defendants filed Defendants' Reply to Plaintiff's Response to Second Motion to Dismiss ("Officer Defendants' Reply")(Docket Entry

---

[13]Defendants Scott Dobak, Tom Gioia, and Neal Berens's Notice of Removal and Jury Demand, Docket Entry No. 1.

[14]Defendant Hufcor, Inc.'s Notice of Consent to Removal, Docket Entry No. 2.

[15]Defendants Tom Gioia's, Scott Dobak's, and Neal Beren's Motion to Dismiss, Docket Entry No. 12.

[16]SAC, Docket Entry No. 14, p. 11 (stating that the claims for unjust enrichment and money had and received are asserted only against Hufcor).

[17]Order, Docket Entry No. 18.

No. 25). On January 13, 2023, Plaintiff filed ICI Construction, Inc.'s Surreply to Scott Dobak's, Tom Gioia's, and Neal Berens' Response in Support of Their Motion to Dismiss ("Plaintiff's Sur-reply")(Docket Entry No. 26), on January 20, 2023, the Officer Defendants filed their Motion to Strike Plaintiff's Sur-reply, and on February 10, 2023, Plaintiff filed its response thereto.[18]

## II. **The Officer Defendants' Motion to Strike**

Asserting that neither the Federal Rules of Civil Procedure nor the Southern District of Texas' Local Rules allow for sur-replies, the Officer Defendants move to strike Plaintiff's sur-reply arguing that Plaintiff filed it without leave of court.[19] The Officer Defendants contend that

> Plaintiff argues for the first time that its second amended complaint meets the higher pleading burden under Federal Rule of Civil Procedure 9(b) because Plaintiff "seeks to redress specific wrongs." . . Plaintiff also supplements its argument that the individual Defendants ratified the statements of Hufcor's other employees with legal authority it failed to include in its response to Defendants' motion to dismiss. . . Plaintiff argues for the first time that an officer who "instigates, aids, or abets a corporation in conversion" can also be liable for conversion."[20]

---

[18]Plaintiff's Response to Officer Defendants' Motion to Strike, Docket Entry No. 30.

[19]Officer Defendants' Motion to Strike, Docket Entry No. 29, p. 2.

[20]Id. (quoting Plaintiff's Sur-Reply, Docket Entry No. 26, pp. 4 and 5).

If Plaintiff's Sur-Reply is not stricken, Defendants seek leave to file their own sur-reply.[21]

Asserting that there is no strict prohibition against the filing of a sur-reply, and that the sur-reply does not raise wholly new arguments but simply expounds upon arguments previously raised in response to the Officer Defendants' Motion to Dismiss, Plaintiff asks the court to deny Defendants' Motion to Strike, and in the alternative, seeks leave to file its sur-reply.[22]

District courts may, in the exercise of sound discretion, allow a responding party to file a sur-reply when the movant raises new legal theories or attempts to present new evidence at the reply stage, and the responding party seeks leave of court to file the sur-reply. See Embry v. Hibbard Inshore, L.L.C., 803 F. App'x 746, 749 (5th Cir. 2020) (per curiam) (citing Austin v. Kroger Texas, L.P., 864 F.3d 326, 336 (5th Cir. 2017) (per curiam)). See also Silo Restaurant Inc. v. Allied Property and Casualty Insurance Co., 420 F.Supp.3d 562, 571 (W.D. Tex. 2019) (recognizing that "granting leave to file a sur-reply in extraordinary circumstances on a showing of good cause is a viable alternative to the general practice to summarily deny or exclude all arguments and issues first raised in reply briefs"). Although Plaintiff's response to

---

[21]Id. at 4.

[22]Plaintiff's Response to Officer Defendants' Motion to Strike, Docket Entry No. 30, p. 3.

Defendants' Motion to Strike requests leave to file a sur-reply, because Plaintiff filed its sur-reply without seeking leave of court, and because neither Plaintiff's Sur-reply nor Plaintiff's Response to Defendants' Motion to Strike argues that Defendants' Reply contains new legal theories, or that extraordinary circumstances or good causes exists for filing a sur-reply, Defendants' Motion to Strike Plaintiff's Sur-Reply will be granted, and Plaintiff's request for leave to file its sur-reply will be denied.  See Austin, 864 F.3d at 336 (district court did not abuse its discretion by denying motion for leave to file a sur-reply when the movant failed to show that reply brief raised new arguments).

### III. **The Officer Defendants' Motion to Dismiss**

The Officer Defendants move to dismiss the claims asserted against them for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6), and alternatively, for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).[23]  Plaintiff responds by arguing that the claims asserted against the Officer Defendants should not be dismissed because it has pled sufficient facts to support those claims,[24] and because the court has personal jurisdiction over the

---

[23]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 8-9.

[24]Plaintiff's Response to Officer Defendants' Motion to
(continued...)

8

Officer Defendants.[25]   Plaintiff also clarifies that the claims asserted against Dobak and Berens are for conversion, civil theft, fraud, fraudulent inducement, and negligent misrepresentation, and that the claims asserted against Gioia are for conversion and civil theft.[26]

## A.   Texas Law Governs Claims Against the Officer Defendants

Citing Texas Business Organizations Code § 1.104, Plaintiff argues that because Hufcor is a Wisconsin corporation, "Wisconsin law applies."[27]   Citing Oxmans' Erwin Meat Co. v. Blacketer, 273 N.W.2d 285, 289 (Wis. 1979), and Casper v. American International South Insurance Co., 800 N.W.2d 880, 898 (Wis. 2011), Plaintiff argues that under Wisconsin law, it need not pierce the corporate veil to hold the Officer Defendants liable for their own conduct.[28] Citing Miller v. Keyser, 90 S.W.3d 712, 717 (Tex. 2002), Plaintiff argues that

> [e]ven if Texas law applies, it is similar to Wisconsin law in this regard . . . As a general rule, corporate officers are personally liable for a corporation's tortious conduct if the person directs the conduct,

---

[24](...continued)
Dismiss, Docket Entry No. 22, p. 10.

[25]Id. at 22.

[26]Id. at 8 n. 11.

[27]Id. at 10.

[28]Id. at 11.

> knowingly participates in the conduct, or has knowledge, either actual or constructive, of the tortious conduct.[29]

The Officer Defendants reply that § 1.104 of Texas Business Organizations Code does not require application of Wisconsin law because that statute only applies when a plaintiff has alleged that individual defendants are acting as alter egos of a corporate defendant.  However, here Plaintiff has made clear that it is not alleging that any of the Officer Defendants acted as an alter ego of Hufcor, but instead, that each of the Officer Defendants is personally liable for his own conduct.[30]

Because this action arises under the court's diversity jurisdiction, the doctrine articulated in Erie R. Co. v. Tompkins, 58 S. Ct. 817 (1938), requires application of the substantive law of the forum state of Texas — including choice of law rules, which may dictate applying another state's laws.  See BNSF Railway Co. v. Panhandle Northern Railroad, L.L.C., 946 F.3d 705, 711 (5th Cir. 2020).  See also Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 61 S. Ct. 1020, 1021 (1941) ("The conflict of law rules to be applied by the federal court in Delaware must conform to those prevailing in Delaware's state courts.").

---

[29]Id.

[30]Officer Defendants' Reply, Docket Entry No. 25, p. 8 (citing SAC, Docket Entry No. 14, p. 3 ¶ 14, and Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 11-12, and 24-25).

Section 1.104 of the Texas Business Organizations Code states:

> The law of the jurisdiction that governs an entity . . .
> applies to the liability of an owner, a member, or a
> managerial official of the entity in the capacity as an
> owner, a member, or a managerial official for an
> obligation, including a debt or other liability, of the
> entity for which the owner, member, or managerial
> official is not otherwise liable by contract or under
> provisions of law other than this code.

Under Texas law knowing participation in a tortious act will render a corporate agent personally liable, while the mere breach of a corporate contractual obligation will not. See Barclay v. Johnson, 686 S.W.2d 334, 336-37 (Tex. App. — Houston [1st Dist.] 1985, no writ) (citing Seale v. Baker, 7 S.W. 742 (Tex. 1888), and Kinkler v. Jurica, 19 S.W. 359 (Tex. 1892)). Thus, under Texas law, Plaintiff need not pierce the corporate veil to impose personal liability on Dobak, Gioia, or Berens, if Plaintiff can show that they knowingly participated in an allegedly tortious act. Id. Because § 1.104 applies only to claims asserted against defendants in their capacities as officers of Hufcor, because Texas law does not require Plaintiff to pierce the corporate veil in order to hold Defendants liable for their own conduct, and because Plaintiff acknowledges that "[t]his case involves . . . Texas state law,"[31] the court concludes that Texas — not Wisconsin — law governs the claims that Plaintiff has asserted against the Officer Defendants.

---

[31]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 28.

11

**B.   Motion to Dismiss for Lack of Personal Jurisdiction**

The Officer Defendants argue that if the claims asserted against them are not dismissed for failure to state a claim under Rule 12(b)(6), those claims should be dismissed under Federal Rule of Civil Procedure 12(b)(2) for "lack[] of personal jurisdiction . . . because Defendants' only contacts with Texas were in their capacity as corporate officers for Hufcor."[32]   Plaintiff disagrees arguing that "this [c]ourt has [p]ersonal [j]urisdiction [o]ver [e]ach [d]efendant,"[33] because the Officer Defendants are not protected by the Fiduciary Shield Doctrine,[34] they have minimum contacts with Texas,[35] and the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.[36] Because personal jurisdiction is an essential element of the court's jurisdiction, the court addresses the Officer Defendants' jurisdictional arguments before reaching their merits-based arguments.   See Sinochem International Co. Ltd. v. Malaysia International Shipping Corp., 127 S. Ct. 1184, 1191 (2007) ("[A] federal court generally may not rule on the merits of a case

---

[32]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, p. 9.

[33]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 22.

[34]Id. at 24-25.

[35]Id. at 25-27.

[36]Id. at 27-28.

12

without first determining that it has jurisdiction over the category of a claim in suit (subject matter jurisdiction) and the parties (personal jurisdiction)."). See also Pervasive Software Inc. v. Lexware GmbH & Co. KG, 688 F.3d 214, 231-32 (5th Cir. 2012) ("Personal jurisdiction . . . is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'") (internal citations omitted).

1.  Standard of Review

Federal Rule of Civil Procedure 12(b)(2) permits dismissal of a suit for lack of personal jurisdiction.  "[O]n a motion to dismiss for lack of [personal] jurisdiction, uncontroverted allegations in the plaintiff's complaint must be taken as true," Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C., 24 F.4th 491, 495 (5th Cir. 2022) (quoting Bullion v. Gillespie, 895 F.2d 213, 217 (5th Cir. 1990)), and any conflict must be resolved in plaintiff's favor.  Bullion, 895 F.2d at 217.  However, the court is not obligated to credit conclusory allegations, even if uncontroverted.  Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001) (per curiam).  "In making its determination, the district court may consider the contents of the record before the court at the time of the motion, including . . . 'any combination of the recognized methods of discovery.'"

13

Quick Technologies, Inc. v. Sage Group PLC, 313 F.3d 338, 343 (5th
Cir. 2002), cert. denied, 124 S. Ct. 66 (2003) (quoting Thompson v.
Chrysler Motors Corp., 755 F.2d 1162, 1165 (5th Cir. 1985)).   The
burden of establishing personal jurisdiction over a non-resident
defendant lies with the plaintiff, and absent an evidentiary
hearing on a motion to dismiss, "that burden requires only that the
nonmovant make a prima facie showing."   Danziger & De Llano, 24
F.4th at 495 (quoting Herman v. Cataphora, Inc., 730 F.3d 460, 464
(5th Cir. 2013)).   "A district court's dismissal of a suit for
lack of personal jurisdiction where the facts are not disputed is
a question of law."   Id.


    2.   Applicable Law

    Plaintiff does not allege that any of the defendants are
domiciled in Texas.   Thus, "[i]n this diversity case, the exercise
of personal jurisdiction over [the Officer Defendants] must comport
with both federal due-process requirements and the long-arm statute
of Texas."   Trois v. Apple Tree Auction Center, Inc., 882 F.3d 485,
488 (5th Cir. 2018).   Because the limits of the Texas long-arm
statute are coextensive with constitutional due process limits, the
inquiry is whether jurisdiction comports with federal
constitutional guarantees. Id.   "Under due-process requirements,
the defendant must have requisite minimum contacts with the forum
state, and the exercise of jurisdiction in the forum state must not

14

infringe on 'traditional notions of fair play and substantial justice.'" Id. at 488-89 (quoting International Shoe Co. v. Washington, 66 S. Ct. 154, 158 (1945)). See also Danziger & De Llano, 24 F.4th at 495 (same). Although the Supreme Court has recognized two types of personal jurisdiction, general and specific, Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco, County, 137 S. Ct. 1773, 1779-80 (2017), Plaintiff argues only that the court possesses specific personal jurisdiction over the Officer Defendants.[37]

"Specific jurisdiction exists when 'the defendant has "purposefully directed" his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities.'" Clemens v. McNamee, 615 F.3d 374, 378 (5th Cir. 2010), cert. denied, 131 S. Ct. 3091 (2011) (quoting Burger King v. Rudzewicz, 105 S. Ct. 2174, 2182 (1985)). For a nonresident defendant to be subject to specific jurisdiction, his "purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state," and there must be "a sufficient nexus between the non-resident's contacts with the forum and the cause of action." Id. at 378-79 (citing Burger King, 105 S. Ct. 2174 at 2182 and Helicopteros Nacionales de Colombia, S.A. v. Hall, 104 S. Ct. 1868,

---

[37]Id. at 25 ("Here, ICI has alleged individual conduct by Dobak, Gioia, and Berens directed at ICI in Texas that give rise to ICI's claim against each of the Defendants.").

1872 (1984)). When examining specific jurisdiction, "[e]ach defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 104 S. Ct. 1482, 1487 (1984), as "[s]pecific jurisdiction is a 'claim-specific inquiry.'" Dontos v. Vendomation NZ Ltd., 582 F.App'x 338, 343 (5th Cir. 2014) (per curiam) (quoting Seiferth v. Helicopteros Atuneros, Inc., 472 F.3d 266, 274 (5th Cir. 2006)). "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant[s] must establish specific jurisdiction for each claim." Id.

Whether a party's conduct creates sufficient minimum contacts to a forum State is highly fact-dependent. See Dontos, 582 F. Appx. at 345. "A single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." Lewis v. Fresne, 252 F.3d 352, 358-59 (5th Cir. 2001). For intentional tort claims, foreign communications directed at the forum can create personal jurisdiction "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action." Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 213 (5th Cir. 1999). In fact, even wholly foreign activity that only has "consequences or effects within the forum will establish minimum contacts if the tortious conduct is purposefully or expressly aimed at the forum state." Dontos, 582 F. App'x at 344-45. See also Calder, 104 S. Ct. at 1487 (holding that when parties are "primary participants in an alleged

16

wrongdoing intentionally directed at a [forum State's] resident, []
jurisdiction over them is proper on that basis").  Because the
focus of the specific jurisdiction inquiry is on the relationship
between the defendant, the forum, and the litigation, id. at 1486,
the fact that a Texas plaintiff suffered some harm in Texas is
insufficient to establish specific jurisdiction.  Revell v. Lidov,
317 F.3d 467, 473 n. 41 (5th Cir. 2002).  Contacts that are
"random, fortuitous, or attenuated" do not satisfy the minimum
contacts requirement.  Moncrief Oil International Inc. v. OAO
Gazprom, 481 F.3d 309, 311 (5th Cir. 2007) (citing Burger King, 105
S. Ct. at 2183).  In deciding whether to exercise specific
jurisdiction, the court may consider the contents of the record,
including affidavits or other recognized methods of discovery.
Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985).

If the plaintiff makes a prima facie showing of minimum
contacts, then the burden shifts to the defendant to show that the
court's exercise of jurisdiction would not comply with traditional
notions of fair play and substantial justice.  Freudensprung v.
Offshore Technical Services, Inc., 379 F.3d 327, 343 (5th Cir.
2004).  In making this determination, the court must consider:
(1) the burden on the defendant; (2) the forum state's interests;
(3) the plaintiff's interest in convenient and effective relief;
(4) the judicial system's interest in efficient resolution of
controversies; and (5) the several states' shared interest in

17

furthering fundamental social policies.  <u>Stroman Realty, Inc. v.</u>
<u>Wercinski,</u> 513 F.3d 476, 487 (5th Cir.), <u>cert. denied,</u> 129 S. Ct.
63 (2008) (citing <u>Asahi Metal Industry Co., Ltd. v. Superior Court</u>
<u>of California, Solano County,</u> 107 S. Ct. 1026, 1033 (1987)).


    3.   <u>Application of the Law to the Allegations</u>

    The Officer Defendants argue that the court lacks specific
jurisdiction over them because they are protected by the fiduciary
shield doctrine and they lack minimum contacts with Texas.[38]


    (a)  The Fiduciary Shield Doctrine Does Not Apply

    Asserting that all of their interactions with Plaintiff were
as corporate agents of Hufcor, and that Gioia signed the contract
with ICI as a corporate agent of Hufcor, the Officer Defendants
urge application of the fiduciary shield doctrine.[39]  The fiduciary
shield doctrine "holds that an individual's transaction of business
within the state solely as a corporate officer does not create
personal jurisdiction over that individual though the state has in
personam jurisdiction over the corporation."  <u>Stuart,</u> 772 F.2d at
1197.  Exceptions to this doctrine have been recognized when the

_____

   [38]Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 21-
24.

   [39]<u>Id.</u> at 21-23.  <u>See also</u> Declaration of Tom Gioia, Exhibit 1,
Docket Entry No. 21-1, p. 2 ¶¶ 5-6; Declaration of Scott Dobak,
Exhibit 2, Docket Entry No. 21-2, pp. 1-2 ¶¶ 5-6; and Declaration
of Neal Berens, Exhibit 3, Docket Entry No. 21-3, pp. 1-2 ¶¶ 2-4.

corporation is the alter ego of the individual, id., and when the individual is sued for specific acts, which had reasonably foreseeable consequences within the forum state.   See General Retail Services, Inc. v. Wireless Toyz Franchise, LLC, 255 F. App'x 775, 795 (5th Cir. 2007).

Plaintiff argues that Texas' fiduciary shield doctrine does not bar the exercise of personal jurisdiction over the Officer Defendants because while that doctrine could prohibit the court from ascribing acts of Hufcor to its corporate agents, it does not prohibit corporate agents from being held personally liable for their own tortious conduct simply because they were corporate officers.   Citing Bradford Coffee, LLC v. Beantown Roasters, Inc., No. 01-21-00295-CV, 2022 WL 4349852, at *20-21 (Tex. App. — Houston [1st Dist.] Sept. 20, 2022, no pet.), Plaintiff also argues that the fiduciary shield doctrine has been held to apply only to the exercise of general — not specific — jurisdiction.[40]

> While
>
> [g]enerally, the fiduciary-shield doctrine protects a nonresident corporate officer or employee from the exercise of personal jurisdiction when all his contacts with Texas were made in a representative capacity, . . . courts applying the fiduciary-shield doctrine 'have limited its application to attempts to exercise general jurisdiction over a nonresident [defendant].

---

[40]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 25.

<u>Bradford Coffee,</u> 2022 WL 4349852, at *20 (citing <u>inter alia</u> <u>Tabacinic v. Frazier,</u> 372 S.W.3d 658, 668-69 (Tex. App. — Dallas 2012, no pet.). Because Plaintiff argues that the court possesses specific — not general — jurisdiction over the Officer Defendants based on their commission of intentional torts, and because both Texas courts and the Fifth Circuit have held that courts may disregard the corporate form and exercise personal jurisdiction over an individual corporate officer if that officer allegedly committed an intentional tort directed at the forum state, the court concludes that the fiduciary shield doctrine does not apply to the claims asserted against the Officer Defendants. <u>See Stuart,</u> 772 F.2d at 1197; <u>General Retail Services,</u> 255 F. App'x at 794-95; and <u>Bradford Coffee,</u> 2022 WL 4349852, at *20-21.

> (b) Plaintiff Has Made of Prima Facie Showing for the Existence of Specific Jurisdiction Over Defendant Berens, but Not Over Defendants Gioia and Dobak
>
> **(1) Conversion and Civil Theft**

Plaintiff alleges that all of the Officer Defendants committed the intentional torts of conversion and civil theft.[41] The tort of conversion is defined under Texas law as "'the wrongful exercise of

---

[41]SAC, Docket Entry No. 14, pp. 6-7 ¶¶ 33-40 (conversion), and 9-10 ¶¶ 51-53 (civil theft). <u>See also</u> Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 8 n. 11 ("ICI maintains the following claims: Dobak and Berens — conversion, fraud, fraudulent inducement, negligent misrepresentation, and Civil Theft; Gioia — conversion and Civil Theft.").

dominion and control over another's property in denial of or inconsistent with [the other's] rights.'" <u>Pervasive Software,</u> 688 F.3d at 229 (quoting <u>Bandy v. First State Bank, Overton, Texas,</u> 835 S.W.2d 609, 622 (Tex. 1992)). The tort of civil theft is defined by the Texas Theft Liability Act ("TTLA"), Tex. Civ. Prac. & Rem. Code §§ 134.001-.005, as theft by any of the numerous methods proscribed in the Texas Penal Code. Based on the allegations in the SAC, Plaintiff must prove that the Officer Defendants unlawfully appropriated the $103,000.000 deposit with the intent to deprive Plaintiff thereof. <u>See</u> <u>Cluck v. Mecom,</u> 401 S.W.3d 110, 117 (Tex. App. — Houston [14th Dist.] 2011, pet. denied) (citing Tex. Civ. Prac. & Rem. Code §§ 134.002-.003, and Texas Penal Code § 31.03(a)). For an act of conversion or theft to establish specific jurisdiction, the wrongful exercise of dominion and control or appropriation of property with intent to deprive the owner of that property must occur in the forum state. <u>See</u> <u>Jones v.</u> <u>Artists Rights Enforcement Corp.,</u> 789 F. App'x 423, 427 (5th Cir. 2019) (per curiam) (citing <u>Pervasive Software,</u> 688 F.3d at 229). "The mere fact that the converted item originated in Texas is not sufficient to create personal jurisdiction under the long-arm statute; the item must be in Texas when the conversion [or theft] actually occurs." <u>Pervasive Software,</u> 688 F.3d at 230.

Citing the Declaration of ICI's President, Bart Cobb, Plaintiff argues that

Defendants' conduct supporting the exercise of personal jurisdiction is as follows:

. . .

• Scott Dobak, Tom Gioia, and Neal Berens — possession of funds requested by Hufcor and paid by ICI.[42]

In pertinent part Cobb states in his declaration that after ICI selected Hufcor to provide partition panels for the Project, Tyler Coldwell ("Coldwell"), Hufcor's local Territorial Sales Manager, stated in an October 27, 2021, email that Hufcor required a deposit of $103,000.00 to lock in glass pricing; that on November 4, 2021, Coldwell followed up on his October 27, 2021, email; and that the same day ICI agreed to pay and did pay the Deposit to lock in glass prices for the Project.[43] Cobb states that on November 8, 2021, Coldwell provided the fully executed Contract between ICI and Hufcor, which had been signed by Gioia, Hufcor's CFO, on November 5, 2021, the day after ICI agreed to pay the Deposit.[44] Cobb also states that in late January and early February of 2022, he began hearing rumors that Hufcor was going out of business, and that based on those rumors, ICI began requesting assurances from Hufcor's upper management regarding the Project and the deposit

---

[42]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 25-26.

[43]Declaration of Bart Cobb ("Cobb Declaration"), Exhibit 1 to Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22-9, pp. 1-2 ¶¶ 4-5 (citing Exhibit 1-A, Docket Entry No. 22-9, pp. 7-9).

[44]Id. at 2 ¶ 6.

22

that ICI had paid.[45]   On February 22, 2022, ICI reiterated its
concerns to Coldwell over the telephone and via email, and shortly
thereafter Cobb received a phone call from Berens.  On February 24,
2022, Berens sent Cobb and email copied to Dobak, which  reassured
Cobb of Hufcor's ability and commitment to perform under the
Contract.[46]   Nevertheless, in June of 2022, Cobb was informed by
unidentified representatives of Hufcor that Hufcor was going out of
business and that the deposit would be returned to ICI, but the
deposit has not been returned.[47]

Plaintiff does not allege that any of the Officer Defendants
requested the deposit or took possession of the deposit once it was
paid.  Nor does Plaintiff allege that any of the Officer Defendants
exercised  dominion  or  control  over  the  deposit  in  Texas,
appropriated the deposit with the intent to deprive Plaintiff of
the deposit in Texas, or refused to return the deposit in Texas.
Instead, Plaintiff merely alleges that "Hufcor, Dobak, Gioia, and
Berens have refused to repay ICI its Deposit,"[48] and that "Hufcor,
Dobak, Gioia, and Berens violated . . . the [TTLA] by wrongfully
taking and retaining ICI's Deposit [] with complete disregard to

---

[45]Id. ¶¶  7-8.

[46]Id. at 3 ¶¶ 10-11.

[47]Id. at 3 ¶ 12.

[48]SAC, Docket Entry No. 14, p. 7 ¶ 37.

ICI's right to the Deposit."[49]   Plaintiff argues that "[w]hen ICI paid the Deposit to Hufcor it was necessarily in the possession, custody, and control of Hufcor and its officers, including Dobak, Gioia, and Berens."[50]   Plaintiff's allegations of conversion and civil theft and Plaintiff's argument regarding the Officer Defendants' participation in the alleged conversion and theft of the deposit are not based on the Officer Defendants' individual actions but, instead, on their status as Hufcor officers.   Because Plaintiff has failed to allege or show that its claim for conversion or its claim for civil theft arises out of or is related to the Officer Defendants' contacts with Texas, the court concludes that Plaintiff has failed to make a <u>prima facie</u> showing sufficient for the court to exercise personal jurisdiction over the Officer Defendants for the claims of conversion or civil theft asserted in the SAC.   See <u>Jones</u>, 789 F. App'x at 427; <u>Pervasive Software</u>, 688 F.3d at 230.

The facts of this case are analogous to the facts at issue in <u>Pervasive Software</u>.   There, the Fifth Circuit held that the Texas court lacked specific jurisdiction over a conversion claim where the defendant lawfully received dominion over a software license in Germany and conversion only could have occurred in Germany when the defendant refused to return its copy of the software.   688 F.3d at

---

[49]<u>Id.</u> at 9 ¶ 52.

[50]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 13.

24

229-30.   Here, the record before the court shows that Plaintiff paid Hufcor $103,000.00 as a deposit to secure pricing and avoid material price increases on November 4, 2021,[51] that in June of 2022 unidentified representatives of Hufcor informed ICI's President, Cobb, that Hufcor was going out of business and that the Deposit would be returned, but that as of December 27, 2022, the date that Cobb executed his declaration and Plaintiff filed its response to the Officer Defendants' Motion to Dismiss, the deposit had not been returned.[52]   Plaintiff alleges that Hufcor is a Wisconsin corporation with its principal place of business in the State of Wisconsin, Dobak is an individual domiciled in the State of Tennessee, Gioia is an individual domiciled in the State of Georgia, and Berens is an individual domiciled in the State of Illinois,[53] but fails either to allege facts or to cite evidence showing that any of the defendants took possession of the deposit or refused to return the deposit in Texas.   Based on this record the court can only conclude that the alleged conversion and civil theft took place outside the forum state of Texas.   See Revell, 317 F.3d at 473 ("the plaintiff's residence in the forum, and suffering harm there, will not alone support jurisdiction").

_____

[51]Cobb Declaration, Exhibit 1 to Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22-9, p. 2 ¶ 5.

[52]Id. at 3 ¶ 12.

[53]SAC, Docket Entry No. 14, p. 2 ¶¶ 8-12.

25

### (2)   Fraud and Fraudulent Inducement

Plaintiff alleges that Dobak and Berens committed the intentional torts of common law fraud and fraudulent inducement.[54] Plaintiff argues that Berens' and Dobak's minimum contacts with Texas include Berens' sending an email and letter dated February 24, 2022, confirming receipt of the $103,000.00 deposit from Plaintiff to secure the Contract price, and assuring Plaintiff of Hufcor's intent to perform the Contract later that year. Therefore Plaintiff argues that Berens and Dobak had notice that they could be haled into a Texas court.

In Trois, 882 F.3d at 492, the Fifth Circuit described the "the considerations for personal jurisdiction over fraud claims." There the Fifth Circuit held that an out-of-state defendant was subject to personal jurisdiction in Texas for a fraud claim that arose out of the defendant's alleged misrepresentations made during a single conference call. Id. at 491. Although the defendant did not initiate the conference call, the Fifth Circuit held that his participation in the call was sufficient for a Texas court to exercise personal jurisdiction because he was "a willing participant on a conference call who actively engaged in conversation regarding his business [in Texas]." Id.

---

[54]Id. at 7-9 ¶¶ 41-45 (common law fraud) and 46-50 (fraudulent inducement). See also Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 8 n. 11 ("ICI maintains the following claims: Dobak and Berens — . . . fraud, fraudulent inducement, . . .").

26

Here, Plaintiff, a Texas resident, alleges that it relied on knowingly false statements that Berens communicated to Plaintiff in Texas on behalf of Hufcor, including statements that

    a)   Hufcor needed the Deposit to lock in glass pricing and prevent material price increases;

    b)   Hufcor intended to pay the Deposit to its suppliers to secure materials for use in the project; [and]

    c)   Hufcor intended to fully perform under the Contract after receipt of the Deposit.[55]

Plaintiff alleges that these false statements induced it to enter into the Contract with Hufcor, pay Hufcor the deposit, and retain Hufcor as a subcontractor on the Project after hearing rumors that Hufcor was going out of business.[56] Plaintiff argues that these statements were communicated by Berens and Dobak via the February 24, 2022, email and attached letter that Berens sent to Cobb and copied to Dobak. Plaintiff argues that such a purposeful communication, directed toward Texas, satisfies the "minimum contacts" required for the court to exercise personal jurisdiction over Berens and Dobak.[57] Because Plaintiff's allegations plainly cast Berens as a willing participant who actively engaged in knowingly communicating allegedly false statements to Plaintiff in

---

[55]SAC, Docket Entry No. 14, p. 8 ¶ 43 (common law fraud); and p. 9 ¶ 48 (fraudulent inducement).

[56]Id. at 8-9 ¶ 42 (fraud) and ¶ 47 (fraudulent inducement).

[57]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 25-27.

Texas, via the February 24, 2022, email and attached letter, Plaintiff has made a prima facie showing sufficient for the court to exercise personal jurisdiction over Berens for the claims of fraud and fraudulent inducement that arise from the February 24, 2022, email and letter that Berens sent to Plaintiff in Texas. See Trois, 882 F.3d at 492 (holding that alleged out-of-state tortfeasor's participation in a single conference call established the requisite minimum contacts to confer personal jurisdiction). See also Wien Air Alaska, 195 F.3d at 213 ("When the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment.").

Since, however, the allegedly false statements in the February 24, 2022, email and letter were not made by Dobak but, instead, were only copied to him, Plaintiff's allegations do not cast Dobak as a willing participant who actively engaged in knowingly communicating allegedly false and fraudulent statements to Plaintiff in Texas. Instead, Plaintiff's allegations show that Dobak's contact with Texas was merely random, fortuitous, or attenuated, and not purposeful enough to create a basis for the court to exercise personal jurisdiction over him in Texas for Plaintiff's common law fraud and fraudulent inducement claims. See Moncrief Oil, 481 F.3d at 312 (contacts that are "random, fortuitous, or attenuated" do not satisfy the minimum contacts requirement).

28

(c)  Berens Has Failed to Show that the Court's Exercise
     of Specific Personal Jurisdiction Would Not Comply
     with Fair Play and Substantial Justice

Asserting that the majority of factors courts consider when
deciding if the exercise of personal jurisdiction is unfair or
unreasonable weigh in favor of exercising of jurisdiction over
Berens, Plaintiff argues that the exercise of personal jurisdiction
over Berens comports with traditional notions of fair play and
justice.[58]  Plaintiff argues that the burden on Berens is minimal
because he and the other defendants have already removed the case
from state court; that in his declaration Berens states that he has
traveled to Texas on various occasions; that Texas has an interest
in this case because it involves a school construction project in
Texas and claims based on Texas law; and that fundamental social
policies would be hindered if Berens is allowed to avoid
jurisdiction of this court when misrepresentations that he directed
to Texas caused harm in Texas.[59]  Plaintiff also argues that it
would be grossly inconvenienced by having to litigate its Texas
state law claims in a court outside of Texas, and that "[c]ommon
sense dictates that a dispute involving the application of Texas
law, a Texas Project, and an injured Texas company is best suited

---

[58]Id. at 27 (although Plaintiff argues for the exercise of
jurisdiction over all of the Officer Defendants, since the court
has already decided that Plaintiff fails to make a prima facie
showing that Gioia or Dobak has minimum contacts with Texas, the
arguments now pertain only to Berens).

[59]Id. at 27-28.

for a Texas court of law."[60]  Although Berens replies that the email
and letter he directed to Texas do not constitute minimum contacts
with Texas, Berens does not dispute that if his email and letter
constitute minimum contacts, the exercise of personal jurisdiction
over him would comport with traditional notions of fair play and
substantial justice.[61]  Accordingly, the court concludes that the
exercise of personal jurisdiction over Berens for the claims of
common law fraud and fraudulent inducement would not offend
traditional notions of fair play and substantial justice.

(d)  Pendent Personal Jurisdiction

Having concluded that it has personal jurisdiction over Berens
with respect to Plaintiff's claims for fraud and fraudulent
inducement, the court concludes that it may assert personal
jurisdiction over Berens for all of Plaintiff's claims based on the
concept of pendent personal jurisdiction.

> [P]endent personal jurisdiction "exists when a court
> possesses personal jurisdiction over a defendant for one
> claim, lacks an independent basis for personal
> jurisdiction over the defendant for another claim that
> arises out of the same nucleus of operative fact, and
> then, because it possesses personal jurisdiction over the
> first claim, asserts personal jurisdiction over the
> second claim."

---

[60]Id. at 28.

[61]See Officer Defendants' Reply, Docket Entry No. 25, p. 16.

Pension Advisory Group, Ltd. v. Country Life Insurance Co., 771
F.Supp.2d 680, 695-96 (S.D. Tex. 2011) (quoting Rolls-Royce Corp.
v. Heros, Inc., 576 F.Supp.2d 765, 783 (N.D. Tex. 2008) (citing
United States v. Botefuhr, 309 F.3d 1263, 1272-73 (10th Cir.
2002))). Although pendent personal jurisdiction is most frequently
employed in federal question cases where the plaintiff raises a
combination of federal and state law claims, courts have also
employed it in diversity cases involving only state law claims when
all of the claims are closely related and involve the same nucleus
of operative fact. See Pension Advisory Group, 771 F.Supp.2d at
695-96. See also Rice v. Nova Biomedical Corp., 763 F.Supp. 961,
962 (N.D. Ill. 1991), aff'd, 38 F.3d 909 (7th Cir. 1994) (same).
Here Plaintiff's causes of action are all closely related and all
involve the same nucleus of operative fact — Plaintiff's payment of
$103,000.00 deposit to Hufcor to secure pricing and delivery of
glass panels, which was not returned when Hufcor went out of
business and failed to deliver the glass panels. The court
concludes, therefore, that the assertion of pendent personal
jurisdiction over Berens is proper for all the causes of action
that Plaintiff has asserted against him.

31

## C. Motion to Dismiss for Failure to State a Claim

### 1. Standard of Review

A motion to dismiss for failure to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6) tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). When considering a motion to dismiss, district courts are able to consider documents that are attached to a motion

32

to dismiss if they are "referred to in the plaintiff's complaint and are central to the plaintiff's claim." <u>Scanlan v. Tex. A & M Univ.</u>, 343 F.3d 533, 536 (5th Cir. 2003) (citing <u>Collins v. Morgan Stanley Dean Witter,</u> 224 F.3d 496, 498-99 (5th Cir. 2000)).

### 2.   Plaintiff Has Failed to State Claims for Conversion or Civil Theft Against Berens

#### (a)   Conversion

Plaintiff's conversion claims are based on allegations that

34.   ICI paid Hufcor $103,000.00 as a deposit and down payment to secure pricing and avoid material price increases of the partition panels Hufcor was obligated to provide and install under the Contract.

35.   . . . Berens confirmed payment of the Deposit by ICI to Hufcor and the purpose of the deposit.

36.   Despite . . . Berens' confirmation, on information and belief, the Deposit was not used as a down payment to secure pricing and avoid material increases of the partition panels.

37.   Hufcor . . . and Berens have refused to repay ICI its Deposit despite Hufcor's non-performance under the Contract and ICI's demands.

38.   ICI is the lawful owner of the Deposit, Hufcor . . . and Berens have no right, title, or interest in ICI's Deposit, and the failure by the Hufcor Defendants to return the Deposit constitutes an unlawful, ongoing conversion of ICI's property.

39.   The Hufcor Defendants' wrongful exercise of dominion over ICI's money was done intentionally and with malice.

40.   As a result of the ongoing conversion by Hufcor . . . and Berens, ICI has suffered actual damages in the amount of the Deposit. . .[62]

---

[62]SAC, Docket Entry No. 14, p. 7 ¶¶ 34-40.

Asserting that Plaintiff's claim for conversion is related solely to the deposit of $103,000.00, and that Plaintiff alleges the deposit was paid to Hufcor, not to him, Berens argues that Plaintiff has failed to plead facts capable of establishing that he exercised dominion and control over the funds in a wrongful manner as needed to state a claim for conversion under Texas law.[63] Plaintiff responds that

> [w]hen ICI paid the Deposit to Hufcor it was necessarily in the possession, custody, and control of Hufcor and its officers, including . . . Berens. . . The question of what happened to the money, how it was spent, by whom it was spent or who took ultimate control of the Deposit, are all questions to be answered by Defendants and lie within their personal knowledge to be fleshed out through discovery. Thus, ICI's conversion claims against Defendants should not be dismissed at this early stage of the litigation.[64]

Under Texas law, the common law tort of conversion is committed by "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with [the owner's] rights." Pervasive Software, 688 F.3d at 229. To establish conversion, Plaintiff must prove that (1) it legally possessed the property or was entitled to it; (2) Defendants wrongfully exercised dominion and control over the property inconsistent with Plaintiff's rights; (3) Plaintiff demanded the property's return;

---

[63]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, p. 13.

[64]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 13-14.

34

and (4) Defendants refused.  Arthur W. Tifford, PA v. Tandem Energy Corp., 562 F.3d 699, 705 (5th Cir. 2009) (quoting Waisath v. Lack's Stores, Inc., 474 S.W.2d 444, 447 (Tex. 1971)).  See also Edge Petroleum Operating Company, Inc. v. GPR Holdings, L.L.C. (In re TXNB Internal Case), 483 F.3d 292, 308 (5th Cir.), cert. denied, 128 S. Ct. 613 (2007) (same).  Because Plaintiff alleges that the property converted is money, i.e., the $103,000.00 deposit paid to Hufcor, Plaintiff must show that the "money was (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper."  In re TXNB Internal Case, 483 F.3d at 308.  See also Chu v. Hong, 249 S.W.3d 441, 444 (Tex. 2008) ("money can be converted only if it is specifically identified and held in trust").

Plaintiff's Second Amended Complaint does not allege facts that if true would establish that Berens — as opposed to Hufcor — exercised dominion and control over the $103,000.00 deposit that Plaintiff paid Hufcor.  Nor has Plaintiff alleged facts that if true would establish a claim for conversion of money that was specifically identified and held in trust, Chu, 249 S.W.3d at 444, or delivered for safekeeping, and intended to be segregated substantially in the form in which it was received.  In re TXNB, 483 F.3d at 308.  While Texas law has long allowed a corporate agent who knowingly participates in a tortious act to be held

individually liable even though the act was performed as a corporate agent, breach of a corporate contractual obligation is not sufficient to hold an agent individually liable. See Barclay, 686 S.W.2d at 336-37.  Because Plaintiff's allegations against Berens do not allege knowing participation in a tortious act of conversion but, instead, allege only breach of a corporate contractual obligation, Plaintiff has failed to state a claim for conversion against Berens for which relief may be granted under Texas law.  Accordingly, the Officer Defendants' Motion to Dismiss the conversion claim asserted Berens will be granted.

        (b)  Civil Theft

    Plaintiff's Civil Theft claim is based on allegations that

    52.  Hufcor . . . and Berens violated Civil Practice & Remedies Code Chapter 134 (["TTLA"]), by wrongfully taking and retaining ICI's Deposit and with complete disregard to ICI's right to the Deposit.  Hufcor . . . and Berens took ICI's property with complete disregard to ICI's right to the property and with the intent to deprive ICI of the property.

    53.  As a result of Hufcor's . . . and Berens's violations of the [TTLA], ICI suffered actual damages and is entitled to recover these damages as well as statutory damages under § 135.005(a)(1), . . .[65]

    Asserting that "Plaintiff failed to replead any facts that, if taken as true, demonstrate that . . . Berens unlawfully

_____

[65]SAC, Docket Entry No. 14, pp. 9-10 ¶¶ 52-53.

                        36

appropriated the deposit Plaintiff allegedly paid Hufcor,"[66] Berens argues "[t]he fact that Hufcor may not have paid the deposit back to Plaintiff is not grounds for a claim against [him]."[67] Plaintiff responds that the SAC

> specifically alleges it paid the Deposit to Hufcor for the purpose of locking in glass pricing and avoiding any material price increases. . . . Berens confirmed Hufcor's receipt of the Deposit. When ICI paid the Deposit it was necessarily in the possession, custody, and control of Hufcor and its officers, including . . . Berens.[68]

The TTLA provides a civil cause of action to victims of theft, as defined by the Texas Penal Code. <u>See</u> Tex. Civ. Prac. & Rem. Code §§ 134.001–.005. The TTLA allows for recovery from a person who commits theft of actual damages, up to $1,000.00 in additional, statutory damages, court costs, and reasonable and necessary attorney's fees. Tex. Civ. Prac. & Rem. Code § 134.005. The TTLA defines "theft" as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03, 31.04, 31.06, 31.07, 31.11, 31.12, 31.13 or 31.14, Penal Code." Tex. Civ. Prac. & Rem. Code § 134.002(2).

---

[66]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, p. 19.

[67]<u>Id.</u> <u>See also</u> Officer Defendants' Reply, Docket Entry No. 25, pp. 13-14.

[68]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 21-22.

Plaintiff's SAC does not identify the specific section of the Texas Penal Code on which its TTLA claim is based, but instead alleges that Hufcor and Berens violated the TTLA "by wrongfully taking and retaining ICI's Deposit and with complete disregard to ICI's right to the Deposit."[69] These allegations are governed by § 31.03(a) of the Texas Penal Code, which provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." The elements of a cause of action under the TTLA based on § 31.03(a) are: (1) the plaintiff had a possessory right to property; (2) the defendant unlawfully appropriated property in violation of the Texas Penal Code; and (3) the plaintiff sustained damages as a result of the theft. See Dixon v. Bank of New York Mellon, Civil Action No. 3:130CV-4235-L, 2014 WL 2991742, *4 (N.D. Tex. July 3, 2014).

Plaintiff's SAC does not allege facts that if true would establish that Berens — as opposed to Hufcor — unlawfully appropriated the $103,000.00 deposit that Plaintiff paid to Hufcor. Instead, Plaintiff alleges that:

> 21. On or about October 27, 2021, **Hufcor** requested a deposit down payment from ICI of $103,000.00 to secure pricing, contract value, and delivery of the glass partition panels for the Project . . .

> 22. **Hufcor** sent an invoice to ICI for payment of the $103,000.00 and . . . ICI paid **Hufcor** $103,000.00.

---

[69]SAC, Docket Entry No. 14, p. 9 ¶ 52.

23. Beginning in early February 2022, ICI began requesting calls with Hufcor's upper management to discuss the Project. . . ICI was specifically concerned about Hufcor's ability to perform under the terms of the Contract and Hufcor's use of the Deposit based on rumors ICI heard that Hufcor was going out of business.

24. Following ICI's multiple attempts to contact Hufcor . . . Berens . . . responded to ICI via email on February 24, 2022 (1) confirming Hufcor's receipt of the Deposit, (2) confirming the purpose of the Deposit to secure pricing on the Project, and (3) further stating their commitment to delivering the panels associated with the Project in December 2022. . .

25. Based on . . . Berens' communication, ICI made the decision to move forward with Hufcor as the subcontractor on the Project. ICI further chose not to seek out alternative subcontractors.

26. Despite its receipt of the Deposit and supposed commitment to performing under the Contract, **Hufcor** has wholly failed and refused to deliver and install the partition panels under the Contract. Furthermore, **Hufcor** and the **Hufcor Officers** have failed and refused to return the Deposit paid by ICI to secure glass pricing. . .

27. ICI has repeatedly attempted to contact Hufcor . . . and Berens concerning the Contract and the Deposit, but they have . . . failed to respond to ICI's inquiries and demands.

28. On information and belief, **Hufcor** and the **Hufcor Officers** diverted the Deposit to expenses unrelated to ICI or the Project.

29. As a result of the Hufcor Defendants' course of conduct outlined above, ICI has suffered damages in the amount of the unreturned Deposit, cost overruns associated with securing another subcontractor, and increased material costs.[70]

---

[70] Id. at 4-6 ¶¶ 20-29 (emphasis added).

Plaintiff's SAC specifically alleges that Hufcor requested a deposit from ICI of $103,000.00 to secure pricing, contract value, and delivery of the glass partition panels for the Project, that ICI paid the deposit pursuant to an invoice sent by Hufcor, and that in February of 2022 receipt of the deposit was confirmed by a letter signed by Berens.  Plaintiff argues that when it paid the deposit to Hufcor, the deposit was necessarily in the possession, custody, and control of Hufcor's officers, including Berens,[71] and that "each allegation made in Count 5 — Civil Theft is tethered to the factual allegations describing the relationships between . . . Berens individually (and in connection with Hufcor)."[72]  But apart from the allegation that in February of 2022 Berens sent an email attached to which was a letter signed by Berens confirming Hufcor's receipt of the deposit to secure pricing and committing to deliver the panels associated with the Project in December of 2022, none of the factual allegations pertain to actions taken by Berens. Plaintiff's SAC contains no allegations that Berens wrongfully sought, received, appropriated, or knowingly participated in Hufcor's alleged wrongful appropriation of the $103,000.00 deposit in violation of the Texas Penal Code.  Plaintiff's allegations against Berens are not based on allegations that he knowingly participated in a tortious act, but instead, on his status as a

_____

[71]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, pp. 21–22.

[72]Id. at 22.

40

corporate officer of Hufcor.  Neither Plaintiff's allegation that Berens signed a letter confirming Hufcor's receipt of the $103,000.00 deposit, nor Plaintiff's allegation that the deposit was necessarily in the possession, custody, and control of Hufcor's officers, including Berens, is sufficient to state a claim for civil theft under Texas law against Berens.  Accordingly, Plaintiff's civil theft claim against Berens will be dismissed.

3. <u>Plaintiff Has Failed to State Claims for Fraud, Fraudulent Inducement, or Negligent Misrepresentation Against Berens</u>

Berens argues that "[d]espite having the opportunity to replead, Plaintiff still fails to plead what action [he] . . . allegedly took, as is required [by Rule 9(b)] . . . for Plaintiff's fraud-based claims."[73]  Alternatively, Berens argues that the economic loss rule bars Plaintiff's claims for fraud, fraudulent inducement, and negligent misrepresentation.[74] Plaintiff responds that its claims for fraud, fraudulent inducement, and negligent misrepresentation comply with the pleading requirements of Rule 9(b), and are not barred by the economic loss rule.[75]

---

[73]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, p. 8.  <u>See also</u> Officer Defendants' Reply, Docket Entry No. 25, pp. 9-12.

[74]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, pp. 18-19.  <u>See also</u> Defendants' Reply, Docket Entry No. 25, pp. 12-13.

[75]Plaintiff's Response to Officer Defendants' Motion to
(continued...)

(a)   Applicable Law

Under Texas law, there are two types of common-law fraud: (1) simple fraud, also known as fraudulent misrepresentation, and (2) fraudulent inducement, which is when someone allegedly induces another to enter into a contract by using false representations. These are separate causes of action, but they share the same elements, which are: (1) that the defendant made a material misrepresentation (2) that was false, (3) and that was either known to be false when made or was asserted without knowledge of its truth, (4) the defendant intended the misrepresentation to be acted upon, (5) the misrepresentation was relied upon, and (6) the misrepresentation caused injury. Jacked UP, LLC v. Sara Lee Corp., 854 F.3d 797, 810 (5th Cir. 2017) (citing Zorilla v. Aypco Construction II, LLC, 469 S.W. 143, 153 (Tex. 2015) (quoting Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc., 960 S.W.2d 41, 47 (Tex. 1998)). See also Anderson v. Durant, 550 S.W.3d 605, 614 (Tex. 2018) ("Fraudulent inducement is a species of common-law fraud that shares the same basic elements [as a fraud claim].").  "Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform." Anderson, 550 S.W.3d at 614.  "Because fraudulent inducement arises in the context of a

---

[75](...continued)
Dismiss, Docket Entry No. 22, pp. 14-21.

contract, the existence of a contract is an essential part of its proof.  Id.  See also Bohnsack v. Varco, L.P., 668 F.3d 262, 277 (5th Cir. 2012) (stating that "with a fraudulent inducement claim, the elements of fraud must be established as they relate to an agreement between the parties," and citing Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001), for stating that "[w]hen a party has not been induced into a contract, . . . there is no detrimental reliance and therefore no fraudulent inducement claim").

When alleging fraud, Federal Rule of Civil Procedure 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp., 565 F.3d 200, 207 (5th Cir.), cert. denied, 130 S. Ct. 199 (2009) (quoting Williams v. WMX Technologies, Inc., 112 F.3d 175, 177 (5th Cir.), cert. denied, 118 S. Ct. 412 (1997)).  Rule 9(b)'s pleading requirements may be relaxed when "the facts relating to the alleged fraud are peculiarly within the perpetrator's knowledge," but "in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud.'"  U.S. ex. rel.

43

<u>Willard v. Humana Health Plan of Texas, Inc.</u>, 336 F.3d 375, 385 (5th Cir. 2003) (quoting <u>Tuchman v. DSC Communications Corp.</u>, 14 F.3d 1061, 1068 (5th Cir. 1994)).  "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim." <u>Southland Securities Corp. v. INSpire Insurance Solutions, Inc.</u>, 365 F.3d 353, 361 (5th Cir. 2004).

The elements of negligent misrepresentation under Texas law are:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies "false information" for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

<u>Life Partners Creditors' Trust v. Cowley (Matter of Life Partners Holdings, Inc.)</u>, 926 F.3d 103, 123 (5th Cir. 2019) (quoting <u>Federal Land Bank Association of Tyler v. Sloane</u>, 825 S.W.2d 439, 442 (Tex. 1991)).  "In a cause of action for negligent misrepresentation, the misrepresentation at issue must be one of existing fact." <u>BCY Water Supply Corp. v. Residential Investments, Inc.</u>, 170 S.W.3d 596, 603 (Tex. App. -- Tyler 2005, pet. denied) (citing <u>Allied Vista, Inc. v. Holt</u>, 987 S.W.2d 138, 141 (Tex. App. — Houston [14th Dist.] 1999, pet. denied)).  "A promise to do or refrain from doing an act in the future is not actionable because it does not concern an existing fact." <u>Id.</u> (citing <u>Miksch v. Exxon Corp.</u>, 979 S.W.2d

700, 706 (Tex. App. -- Houston [14th Dist.] 1998, pet. denied)).

When claims for fraud and negligent misrepresentation are based on

the same allegations of fact, as is the case here, Rule 9(b)'s

heightened pleading standard applies to claims for negligent

misrepresentation as well.  See Matter of Life Partners Holdings,

Inc., 926 F.3d at 123 (citing Benchmark Electronics, Inc. v. J.M.

Huber Corp., 343 F.3d 719, 723 (5th Cir. 2003), and Williams, 112

F.3d at 177).


                (b)  Application of the Law to the Allegations

      Plaintiff's claims for fraud and negligent misrepresentation

are based on allegations that

      42.  Hufcor . . . and Berens made material false
      representations related to the Contract and the Deposit
      that they knew were false, with the purpose of inducing
      ICI to enter into the Contract, pay the Deposit, and
      retain Hufcor as a subcontractor on the [P]roject.  ICI
      relied on those false representations when entering the
      Contract, paying the Deposit, and retaining Hufcor as the
      subcontractor on the Project.

      43.  The material misrepresentations made by Hufcor . .
      . and Berens include, but are not limited to, the
      following:

           a)  Hufcor needed the Deposit to lock in glass
               pricing and prevent material price increases;

           b)  Hufcor intended to pay the Deposit to its
               suppliers to secure materials for use in the
               project;

           c)  Hufcor intended to fully perform under the
               Contract after receipt of the Deposit.

                                  45

44. Each of the above-referenced representations
constitutes fraud by Hufcor . . . and Berens. The
fraudulent conduct of Hufcor . . . and Berens is the
proximate cause of ICI's damages.

45. As a result of the fraudulent conduct of Hufcor . .
. and Berens, ICI seeks actual and exemplary damages.[76]

Plaintiff's claim for fraudulent inducement alleges the same

misrepresentations that underlie its claims for fraud and negligent

misrepresentation,[77] and asserts that those misrepresentations

"fraudulently induced ICI to enter into the Contract."[78]

Berens argues that dismissal is required because Plaintiff's

allegations impermissibly lump the various defendants together,

alleging that each provided unspecified false information.[79]

Plaintiff responds that the complaint specifically

alleges the who, what, when, and where concerning the
individual Defendants as follows:

- . . . Berens stated the following in email
  correspondence sent to ICI on February 24,
  2022:

  ○ "Hufcor [had] received a deposit of
    $103,000.00 down payment on [the]
    [P]roject which secures pricing for the
    [P]roject."

-------------------------

[76]SAC, Docket Entry No. 14, p. 8 ¶¶ 42-45. See also id. at 10-
11 ¶¶ 55-57 (restating essentially the same text substituting
"negligent misrepresentation" for "fraud").

[77]Id. at 9 ¶ 48.

[78]Id. ¶ 47.

[79]Officer Defendants' Motion to Dismiss, Docket Entry No. 21,
p. 12. See also Officer Defendants' Reply, Docket Entry No. 25,
pp. 9-10.

> ○   "[The] [P]roject [would] not be subject
>     to current or future price increases."
>
> ○   "Finally, [they] are committ[ed] to
>     delivering the panels association with
>     [the Project] in December of [2022]."[80]

Plaintiff also argues that

> each allegation made in Counts 3 [fraud] and 6 [negligent
> misrepresentation] is tethered to the factual allegations
> describing the relationships between . . . Berens
> individually (and in connection with Hufcor) and the
> alleged misconduct to state a claim on which relief may
> be granted and give Defendants fair notice of ICI's fraud
> and negligent misrepresentation claims.[81]

While multiple defendants' conduct may be "lumped together" if

the plaintiff's allegations elsewhere designate the nature of each

defendant's relationship to a particular scheme and identify each

defendant's role therein, see Steiner v. Southmark Corp., 734

F.Supp. 269, 274 (N.D. Tex. 1990), the allegations regarding

Berens' role in the alleged fraud, fraudulent inducement, and

negligent misrepresentation made elsewhere in the SAC fail to

support claims for which relief may be granted.

Plaintiff alleges that Berens made material false statements

related to the Contract and the Deposit, knowing that they were

false, with the purpose of inducing ICI to enter into the Contract,

pay the Deposit, and retain Hufcor as a subcontractor on the

---

[80]Plaintiff's Response to Officer Defendants' Motion to
Dismiss, Docket Entry No. 22, p. 15 (quoting Berens' February 24,
2022, Letter, Exhibit B to SAC, Docket Entry No. 14-2, p. 2).

[81]Id.

project,[82] but the only statements attributable to Berens referenced in Plaintiff's SAC are statements that he made in his February 24, 2022, letter to Cobb.

Although Plaintiff has alleged that statements in Berens' February 24, 2022, letter were "knowingly false,"[83] and "made without exercising due care or competence,"[84] Plaintiff has failed to allege specific facts supporting an inference that the statements in Berens' February 24, 2022, letter were "knowingly false," or "made without exercising due care or competence."  See U.S. ex rel. Willard, 336 F.3d at 385 (quoting Tuchman, 14 F.3d at 1068) ("in order to adequately plead scienter, 'a plaintiff must set forth specific facts that support an inference of fraud'").  Plaintiff has failed to allege any facts that show that Berens' statements were belied by his actual knowledge of contradictory facts.  Without such a showing, the SAC fails to state a claim for fraud or fraudulent inducement.  Absent specific facts supporting an inference that Berens' statements were knowingly false or made without exercising due care or competence, Plaintiff's allegations that Berens' statements were knowingly false or made without exercising due care or competence are merely conclusory allegations that the court need not credit.  See Panda Brandywine Corp., 253

---

[82]SAC, Docket Entry No. 14, p. 8 ¶ 42.

[83]Id.

[84]Id. at 11 ¶ 57.

F.3d at 869.   Because Plaintiff has failed to allege facts
supporting an inference that the statements in Berens' February 24,
2022, letter were knowingly false or made without exercising due
care or competence, Plaintiff has failed to state claims against
Berens for fraud, fraudulent inducement, or negligent
misrepresentation.   See Jacked UP, 854 F.3d at 810 (recognizing
that while claims for fraud and fraudulent inducement are separate
causes of action, they share the same basic elements, including
(1) that the defendant made a material misrepresentation (2) that
was false, and (3) that was either known to be false when made or
was asserted without knowledge of its truth); Anderson, 550 S.W.3d
at 614 (same); Matter of Life Partners Holdings, Inc., 926 F.3d at
123 (recognizing that when claims for fraud and negligent
misrepresentation are based on the same allegations of fact, as is
the case here, Rule 9(b)'s heightened pleading standard applies to
both).

Plaintiff's allegations fail to state a claim against Berens
for fraudulent inducement for the additional reason that the
contract attached to Plaintiff's SAC shows that Plaintiff entered
it on September 22, 2021,[85] months before Berens wrote the February
24, 2022, letter, which contained the only allegedly false
statements attributed to Berens in Plaintiff's SAC.   Because the
statements made in Berens' February 24, 2022, letter were made

---

[85]Contract, Exhibit A to SAC, Docket Entry No. 14-1, p. 5.

months after Plaintiff entered the contract, those statements could not have induced Plaintiff to enter that contract.  See Bohnsack, 668 F.3d at 277 (citing Haase, 62 S.W.3d at 798) ("When a party has not been induced into a contract . . . there is no detrimental reliance and therefore no fraudulent inducement claim.").

> (c)  Plaintiff's Fraud, Fraudulent Inducement, and Negligent Misrepresentation Claims Against Berens Are Barred by the Economic Loss Rule

Asserting that Plaintiff's fraud, fraudulent inducement and negligent misrepresentation claims sound in contract, not tort, Berens argues that "[t]he economic loss rule 'precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties."[86]  Plaintiff responds that "[t]he Texas Supreme Court has listed a myriad of torts that the economic loss rule does not bar, including negligent misrepresentation, fraud and fraudulent inducement."[87]  Asserting that "[t]he key question in determining whether the economic loss rule bars a claim is whether the defendant owes a duty independent from [a] contractual duty,"[88] Plaintiff argues that it "has plead facts that show Defendants did in fact owe a duty separate from a contractual

---

[86]Officer Defendants' Motion to Dismiss, Docket Entry No. 21, p. 18.

[87]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 20.

[88]Id.

duty, particularly where they opted to make affirmative
representations to ICI that they were not obligated to make,"[89] and
that "this key determination is one to be further fleshed out
during the discovery process."[90]  Plaintiff also argues that

> [u]nder the terms of the Contract, ICI was to pay Hufcor
> the Contract amount "equal to the percent of the work
> performed" by Hufcor.  At the time that ICI paid the
> Deposit to Hufcor, it had yet to perform any work on the
> Project.  Moreover, the Contract does not call for a
> separate deposit to secure pricing and avoid price
> increases.  Thus, . . . Berens' representations and
> involvement in negotiations regarding use of the Deposit
> are not related to Hufcor's failure to perform
> contractual duties.  Instead, they arise from separate
> promises and representations made by . . . Berens.[91]

Citing <u>Southwestern Bell Telephone Co. v. DeLanney</u>, 809 S.W.2d
493, 494 (Tex. 1991), Berens replies that the economic loss rule
bars Plaintiff's fraud claim because

> the only representations about which Plaintiff complains
> occurred five months after Plaintiff executed the
> contract and paid the deposit, and, more importantly,
> came at the request of Plaintiff in accordance with a
> provision of the contract.  Because the duty to make the
> representation[s at issue] only arose from the contract
> and "would [not] give rise to liability independent of
> the fact that the contract exists between the parties,"
> Plaintiff's purported fraud claim sounds in contract.[92]

Citing <u>West Loop Hospital, LLC v. Houston Galleria Lodging
Associates, LLC,</u> 649 S.W.3d 461, 487 (Tex. App. — Houston [1st

---

[89]<u>Id.</u>

[90]<u>Id.</u>

[91]<u>Id.</u> at 20-21.

[92]Officer Defendants' Reply, Docket Entry No. 25, pp. 12-13.

51

Dist.] 2002, pet. denied), Berens also argues that the economic loss rule bars Plaintiff's fraudulent inducement claim because "representations allegedly made <u>after</u> execution of the contract at issue are not claims for fraudulent inducement of the contract and thus, do not fall within the exception to the economic loss rule for fraudulent inducement claims."[93]

"Under Texas law, the independent injury rule — also referred to as the economic loss rule — precludes recovery in tort when the loss complained of is the subject matter of a contract . . ." <u>Ibe v. Jones</u>, 836 F.3d 516, 526 (5th Cir. 2016) (citing <u>DeLanney</u>, 809 S.W.2d at 494). Privity of contract is not a requirement for application of the economic loss rule. <u>Sharyland Water Supply Corp. v. City of Alton</u>, 354 S.W.3d 407, 419 (Tex. 2011). "In determining whether a claim can be brought as a tort, consideration must be given to 'the source of the defendant's duty to act (whether it arose solely out of the contract or from some common-law duty) and the nature of the remedy sought by the plaintiff.'" <u>Ibe</u>, 836 F.3d at 526 (quoting <u>Crawford v. Ace Sign, Inc.</u>, 917 S.W.2d 12, 13 (Tex. 1996) (per curiam)). <u>See also Medical City Dallas, Ltd. v. Carlisle Corp.</u>, 251 S.W.3d 55, 61 (Tex. 2008)("Under the economic loss rule, the nature of the injury helps determine which duty or duties are breached and, ultimately, which damages are appropriate."). "When the injury is only the economic

---

[93]<u>Id.</u> at 13.

loss to the subject of a contract . . . the action sounds in contract alone." DeLanney, 809 S.W.2d at 495 (quoting Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986)). But see Formosa Plastics, 960 S.W.2d at 46 (declining to apply the economic loss rule to a fraudulent inducement claim, even when the plaintiff suffered only economic losses to the subject of a contract); and D.S.A., Inc. v. Hillsboro Independent School District, 973 S.W.2d 663, 663-64 (Tex. 1998) (per curiam) (explaining that Formosa did not extend to negligent misrepresentation claims, which are viable only if a party sustains an injury independent from those stemming from a contractual breach). "[A] party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit." Chapman Custom Homes, Inc. v. Dallas Plumbing Co., 445 S.W.3d 716, 718 (Tex. 2014) (per curiam).

Plaintiff's fraud, fraudulent inducement, and negligent misrepresentation claims are grounded on allegations that Berens February 24, 2022, letter to Plaintiff's president contained statements that were knowingly false and made without exercising due care or competence. But for the reasons stated above in § III.C.3, the court has already concluded that Plaintiff has failed to allege facts supporting an inference that the statements in Berens' letter were, in fact, knowingly false or made without exercising due care or competence. Accordingly, Plaintiff's claims

for fraud, fraudulent inducement, and negligent misrepresentation do not allege breach of any duty owed to Plaintiff. Since, moreover, the statements that Berens made in the February 24, 2022, letter were made months after Plaintiff entered the Contract, they could not possibly have induced Plaintiff to enter the Contract, and cannot support a claim for fraudulent inducement that is excepted from the economic loss rule. See West Loop Hospital, 649 S.W.3d at 487-88.

Nor has Plaintiff alleged facts capable of showing that the remedies being sought for its fraud, fraudulent inducement, and negligent misrepresentation claims are not remedies for merely economic damages stemming from the loss of contractual benefits. To the contrary, Plaintiff alleges that "Hufcor and the Hufcor Officers have failed and refused to return the Deposit paid by ICI to secure glass pricing,"[94] and that "[a]s a result of the Hufcor Defendants' course of conduct . . ., ICI has suffered damages in the amount of the unreturned Deposit, cost overruns associated with securing another subcontractor, and increased material costs."[95] These allegations in Plaintiff's SAC show that the only injuries Plaintiff alleges to have suffered are economic losses arising from loss of contractual benefits. Because Plaintiff fails to allege facts capable of showing either that its claims for fraud,

---

[94]SAC, Docket Entry No. 14, p. 5 ¶ 26.

[95]Id. at 6 ¶ 29.

54

fraudulent inducement, or negligent misrepresentation are claims for breaches of duties owed to Plaintiff independent of a contractual duty, or that the harms Plaintiff seeks to remedy are not merely the economic loss of contractual benefits, the court concludes that the claims that Plaintiff has asserted against Berens for fraud, fraudulent inducement, and negligent misrepresentation are barred by the economic loss rule.

## IV. **Plaintiff's Requests for Continuance and for Leave to Amend**

The last section of Plaintiff's Response to the Officer Defendants' Motion to Dismiss is titled "Request for Continuance & Leave to Amend."[96]  Plaintiff states that

> [i]n the event that the Court determines additional facts must be plead by ICI to prevent dismissal, ICI requests that the Court grant ICI leave to amend its complaint and that the hearing on Defendants' Motion to Dismiss be continued to allow for discovery on the matters at issue in Defendants' Motion, and specifically to allow completion of written and oral discovery concerning any personal jurisdiction questions that remain.[97]

Local Rule 7.3 states that "[o]pposed motions will be submitted to the judge 21 days from filing without notice from the clerk and without appearance by counsel."  Paragraph 5(A) of this court's procedures state that "[t]he court follows the written motion practice described in the Local Rules.  Since most motions

---

[96]Plaintiff's Response to Officer Defendants' Motion to Dismiss, Docket Entry No. 22, p. 29.

[97]Id.

will be ruled on without an oral hearing, concise, clear motions and briefs are very important. The motion will be considered by the court after the submission date." In pertinent part ¶ 5(D) of this court's procedures states that "[r]equests for oral argument on motions are not necessary. The court will notify counsel if the court determines that oral argument would be beneficial."

Plaintiff has amended its complaint twice. Although Plaintiff was aware of the Officer Defendants' objections to its SAC because those objections appear in the Officer Defendants' Motion to Dismiss, Plaintiff not only argues that the facts alleged in its SAC are sufficient to withstand the Officer Defendants' Motion to Dismiss, but also fails either to furnish the court with a proposed Third Amended Complaint or to alert the court to additional facts not previously pleaded that could cure the pleading defects raised by the Officer Defendants. Under these circumstances the court is not persuaded that Plaintiff should receive another opportunity to plead its claims. See McKinney v. Irving Independent School Dist., 309 F.3d 308, 315 (5th Cir. 2002), cert. denied, 123 S. Ct. 1332 (2003) (finding no abuse of discretion in the district court's denial of request for leave to amend where the plaintiff failed to submit a proposed amended complaint together with a request for leave to amend and failed to alert the court to the substance of any proposed amendment). Accordingly, Plaintiff's requests for a continuance and leave to amend will be denied.

## V. **Conclusions and Order**

For the reasons stated above, in § II, Defendants Scott Dobak, Tom Gioia, and Neal Berens's Opposed Motion to Strike Plaintiff's Sur-Reply, Docket Entry No. 29, is **GRANTED**, and Plaintiff's request for leave to file its sur-reply made in ICI Construction, Inc.'s Response to Scott Dobak's, Tom Gioia's, and Neal Berens' Motion to Strike ICI Construction, Inc.'s Surreply,  Docket Entry No. 30, is **DENIED**.

For the reasons stated above in § III.B, the motions of Defendants Tom Gioia and Scott Dobak to dismiss the claims asserted against them pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction are **GRANTED**, and the motion of Defendant Neal Berens to dismiss the claims asserted against him pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction is **DENIED**.  For the reasons stated above in § III.C, the motion of Defendant Neal Berens to dismiss the claims asserted against him pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted is **GRANTED**.  Accordingly, Defendants Tom Gioia's, Scott Dobak's, and Neal Beren's Second Motion to Dismiss, Docket Entry No. 21, is **GRANTED in PART and DENIED in PART**, the claims asserted against Defendants Tom Gioia and Scott Dobak are **DISMISSED WITHOUT PREJUDICE**, and the claims asserted against Defendant Neal Berens are **DISMISSED WITH PREJUDICE**.

For the reasons stated above in § IV, Plaintiff's requests for a continuance and to replead made in the last section of ICI Construction, Inc.'s Response to Scott Dobak's, Tom Gioia's, and Neal Berens' Second Motion to Dismiss, Docket Entry No. 22, is **DENIED**.

Having ruled on the Officer Defendants' Motion to Dismiss, the court concludes that the this action is appropriate for early mediation.  If the remaining parties are unable to settle this case within the next thirty (30) days, they will provide the court with the name and contact information of an agreed upon mediator, or request that the court refer the case to Magistrate Judge Christina A. Bryan for a settlement conference.

**SIGNED** at Houston, Texas, this 7th day of March, 2023.

SIM LAKE
SENIOR UNITED STATES DISTRICT JUDGE